```
                     UNITED STATES DISTRICT COURT
                      MIDDLE DISTRICT OF FLORIDA
                         JACKSONVILLE DIVISION
```

JAMES G. MAHORNER,

                            Plaintiff,
v.                                         Case No.   3:08-cv-300-J-33TEM

STATE OF FLORIDA and BILL McCOLLUM,
Attorney General of Florida,

                            Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendants' Motion to Dismiss or, Alternatively, Motion for Summary Judgment (Doc. # 3), which was filed on April 21, 2008.  Plaintiff filed a Response in Opposition to Defendants' dispositive motion on April 28, 2008. (Doc. # 6).  Also on April 28, 2008, Plaintiff filed his Motion for Summary Judgment (Doc. # 7), and Defendants filed their Response in Opposition to Plaintiff's Motion for Summary Judgment on May 1, 2008. (Doc. # 9).  On July 9, 2008, Plaintiff filed his Motion for Accelerated Ruling (Doc. # 11).  For the reasons that follow, this Court grants Defendants' motion to dismiss the complaint in this case.

**I.   Plaintiff's Complaint**

Pro se Plaintiff James G. Mahorner, a seventy-six-year-old former practicing attorney, filed his complaint seeking injunctive and declaratory relief on March 25, 2008. (Doc. # 1). Specifically, Plaintiff "seeks a declaratory judgment of

unconstitutionality and an injunction barring enforcement of the assisted suicide provision of Section 782.08, Florida Statute, Assisting Self-Murder." (Doc. # 1 at 1). Plaintiff asserts in his complaint that a medical condition associated with "ischemic occurrences created by stress" and "multiple mini-strokes" has depleted Plaintiff's mental capacity. (Doc. # 1 at ¶ 2.1). Further, Plaintiff submits that he is "under constant threat of substantial loss of competency and/or consciousness. Once such occurs, Plaintiff will have no personal choice and, therefore, must select his choice and now obtain judicial approval of his choice to have a non-lingering, quick, medically-created death unrelated to the pain of starvation." (Doc. # 1 at ¶ 2.1). Plaintiff desires to hire a physician to inject him with "a lethal pain-relieving" drug to hasten his demise. (Doc. # 1 at ¶ 4.1).

However, Florida Statute Section 782.08, Florida's Assisted-Suicide Statute, clearly criminalizes assisted suicide: "Every person deliberately assisting another in the commission of self-murder shall be guilty of manslaughter, a felony of the second degree, punishable as provided in Sections 775.082, 775.083, or 775.084."

Plaintiff asserts a number of arguments in his challenge of Florida's Assisted-Suicide Statute, Section 782.08. Prominently, Plaintiff asserts that Florida's Assisted-Suicide Statute violates the Equal Protection Clause as well as the Due Process Clause of

the Fourteenth Amendment. Notably, Plaintiff argues:

> The statute -- by making assistance by physicians, family, or others a felony -- prevents competent, terminally ill adults from exercising the right to choose or pre-choose, before the occurrence of illness, the hastening of inevitable death by a medically assisted quick procedure that avoids lingering, painful death by starvation. The statute denies these individuals the liberty and privacy to decide what to do with their own bodies and lives and forces them to endure pain, anguish, and loss of dignity through a tortuous death rather than receiving a medically assisted non-tortuous, painless death. The statute denies the equal protection given to convicted murders who are guaranteed a quick, painless death under a medical procedure. It denies the painless, medically assisted death given to dogs and other animals because a dog owner permits death by starvation rather than the quick medically assisted death given by a veterinarian, the owner is sentenced for the felony of the aggravated animal abuse. The statute denies the equal protection given to those quickly terminated by removal from life supporting pulmonary machines. The last four months of life in a medical situation are more expensive than the treatment given during the preceding adult lifetime. The tortuous lingering death required by anti-assisted suicide statutes takes plaintiff's property without due process so that the transfer of plaintiff's funds to the hospital provides extensive taxes for federal and other governments that impact plaintiff and other[s] similarly situated.

(Doc. # 1 at 1-2).

Thus, Plaintiff contends that, under Florida's Assisted-Suicide Statute, he fares worse than criminals facing the death penalty and dogs euthanized by veterinarians. In addition, Plaintiff contends that the Florida Assisted-Suicide Statute "denies [him] the equal protection given to those quickly terminated by removal from life supporting pulmonary machines." (Doc. # 1 at 2). Further, Plaintiff asserts, "Women are given control of their bodies with

3

medically assisted abortion and the denial of such comparable right to males who have highly limited control of their bodies at time of death is as chauvinistic as the draft laws of the past." (Doc. # 1 at 2).[1]

Plaintiff seeks a declaration from this Court that the Florida Assisted-Suicide Statute is unconstitutional. In the alternative, Plaintiff seeks an order from this Court allowing him to hire a physician to hasten his death under certain conditions.

## II. Defendants' Motion to Dismiss or Motion for Summary Judgment

Defendants assert that Plaintiff's complaint should be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, that this Court should enter summary judgment in favor of Defendants because the United States Supreme Court has squarely addressed this issue and Plaintiff has no right to an assisted suicide. See Washington v. Glucksberg, 521 U.S. 702 (1997). The Court will address these issues in turn.

## III. Legal Standard

### A. Motion to Dismiss

---

[1] Plaintiff's complaint also contains a number of unsupported and inflammatory allegations which appear to be unrelated to Plaintiff's pending request. For example, Plaintiff asserts, "Special children whose blood type brings thousands of dollars per withdrawal are kidnapped and held in slavery for their productivity." (Doc. # 1 at 1). This Court's present order has attempted to separate the wheat from the chaff.

On a motion to dismiss, a district court must accept as true all the allegations in the complaint and construe them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). A court must favor the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). The complaint may not be dismissed if the factual allegations, taken as true, suffice to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964–65 (2007) (concluding that complaint need not state "detailed factual allegations" but must state sufficient factual allegations to raise right to relief above speculative level). Thus, a complaint may be dismissed only if all the factual allegations, taken as true and construed in the light most favorable to the plaintiff, fail to raise a right to relief above the speculative level.

### B. Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual

5

dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true

and all reasonable inferences must be drawn in the non-moving party's favor. <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing <u>Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)). However, if non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981), <u>cert. denied</u>, 456 U.S. 1010 (1982).

**IV.   <u>Analysis</u>**

This Court has had the opportunity to review case law from the United States Supreme Court, as well as from the Florida Supreme Court, which direct the dismissal of Plaintiff's complaint. This Court appreciates that Plaintiff may be facing difficult issues which, subjectively, cause Plaintiff to question the value of his own life; however, this Court cannot provide the relief that Plaintiff seeks via his complaint.

This Court will begin its analysis with a discussion of <u>Washington v. Glucksberg</u>, 521 U.S. 702 (1997), a case which is squarely on point and decisive as to the primary issues presented

in this case. In <u>Glucksberg</u>, physicians, terminally ill patients, and "Compassion in Dying" an advocacy group, petitioned the district court for an order finding that Washington's ban of physician-assisted suicide was unconstitutional. Similar to the arguments presented by Plaintiff in the present case, the plaintiffs in <u>Glucksberg</u> asserted "the existence of a liberty interest protected by the Fourteenth Amendment which extends to a personal choice by a mentally competent, terminally ill adult to commit physician-assisted suicide." <u>Id.</u> at 708. The district court agreed with the plaintiffs and entered an order declaring Washington's statute barring physician-assisted suicide to be unconstitutional. <u>Id.</u> The district court found that the statute in question "places an undue burden on the exercise of [that] constitutionally protected liberty interest . . . [and] violated the Equal Protection Clause's requirement that all persons similarly situated be treated alike." <u>Id.</u> at 708 (internal citations omitted).

The defendants in <u>Glucksberg</u>, the State of Washington and its Attorney General, appealed the district court's ruling to the Ninth Circuit. <u>Id.</u> A panel of the Court of Appeals for the Ninth Circuit reversed the district court's order, noting, "in the two hundred and five years of our existence no constitutional right to aid in killing oneself has ever been asserted and upheld by a court of final jurisdiction." <u>Id.</u> at 708-709 (citing <u>Compassion in Dying v.</u>

8

Washington, 49 F.3d 586, 591 (1995). Thereafter, the Ninth Circuit reheard the case en banc, reversed the panel's decision, and affirmed the district court. Glucksberg, 521 U.S. at 709 (citing Compassion in Dying v. Washington, 79 F.3d 790 (1996). The Ninth Circuit upheld the district court's order finding the ban of assisted suicide as unconstitutional, emphasizing "the Constitution encompasses a due process liberty interest in controlling the time and manner of one's death -- that there is, in short, a constitutionally-recognized right to die." Glucksberg, 521 U.S. at 709 (citing Compassion in Dying v. Washington, 79 F.3d at 816. The Ninth Circuit did not address the district court's equal protection holding.

The United States Supreme Court granted certiorari and reversed. The Court delved into a lengthy Due Process analysis "examining our Nation's history, legal traditions, and practices," noting that "[i]n almost every State -- indeed, in almost every western democracy -- it is a crime to assist suicide." Glucksberg, 521 U.S. at 710. The Court continued, "The States' assisted-suicide bans are not innovations. Rather, they are longstanding expressions of the States' commitment to the protection and preservation of all human life." Id. The Court further noted, "opposition to and condemnation of suicide -- and, therefore, of assisting suicide -- are consistent and enduring themes of our philosophical, legal, and cultural heritages." Id. at 711.

The Court described the history of assisted-suicide law and then opened the door to debate, noting, "[t]hough deeply rooted, the States' assisted-suicide bans have in recent years been reexamined and, generally, reaffirmed." Id. at 716. The Court explained that, due to advances in medicine and technology "Americans today are increasingly likely to die in institutions, from chronic illness." Id. Due to this shift, "public concern and democratic action are sharply focused on how best to protect dignity and independence at the end of life." Id. Against this backdrop, the Court determined:

> The history of the law's treatment of assisted suicide in this country has been and continues to be one of the rejection of nearly all efforts to permit it. That being the case, our decisions lead us to conclude that the asserted "right" to assistance in committing suicide is not a fundamental liberty interest protected by the Due Process Clause. The Constitution also requires, however, that Washington's assisted-suicide ban be rationally related to legitimate government interests. . . . This requirement is unquestionably met here.

Id. at 728.

In closing, the Court indicated that Washington's assisted-suicide statute does not violate the Fourteenth Amendment either on its face or as applied to competent, terminally ill adults who wish to hasten their death.  Id. at 735.[2] "The question presented in

---

[2] The Court invited future discussion; however, noting: "Throughout the Nation, Americans are engaged in an earnest and profound debate about the morality, legality, and practicality of physician-assisted suicide.  Our holding permits this debate to

10

this case is whether Washington's prohibition against 'causing' or 'aiding' a suicide offends the Fourteenth Amendment to the United States Constitution. We hold that it does not." Id. at 705-706.

In a concurring opinion, Justice Stevens provides further illumination of the issue before this Court. Commenting on the sanctity of life and the value that each human being inherently possesses, Justice Stevens offered as follows:

> History and tradition provide ample support for refusing to recognize an open-ended constitutional right to commit suicide. Much more than the State's paternalistic interest in protecting the individual from the irrevocable consequences of an ill-advised decision motivated by temporary concerns is at stake. There is truth in John Donne's observation that "No man is an island."[3] The State has an interest in preserving and fostering the benefits that every human being may provide to the community -- a community that thrives on the exchange of ideas, expressions of affection, shared memories and humorous incidents as well as on the material contributions that its members create and support. The value to others of a person's life is far too precious to allow the individual to claim a constitutional entitlement to complete autonomy in making a decision to end that life. Thus, I fully agree with the Court that the "liberty" protected by the Due Process

---

continue, as it should in a democratic society." Id. at 735.

[3] "Who casts not up his eyes to the sun when it rises? but who takes off his eye from a comet when that breaks out? Who bends not his ear to any bell which upon any occasion rings? but who can remove it from that bell which is passing a piece of himself out of this world? No man is an island, entire of itself; every man is a piece of the continent, a part of the main. If a clod be washed away by the sea, Europe is the less, as well as if a promontory were, as well as if a manor of thy friend's or of thine own were; any man's death diminishes me, because I am involved in mankind; and therefore, never send to know for whom the bell tolls; it tolls for thee." J. Donne, Meditation No. 17, Devotions Upon Emergent Occasions 86, 87 (A. Raspa ed. 1987).

11

>Clause does not include a categorical "right to commit suicide which itself includes the right to assistance in doing so."

Id. at 740-741.

Justice Stevens' enlightening comments concerning the intrinsic value of each human life are juxtaposed with the following admonition, which is particularly pertinent to the present case: "A State, like Washington, that has authorized the death penalty and thereby has concluded that the sanctity of human life does not require that it always be preserved, must acknowledge that there are situations in which an interest in hastening death is legitimate. Indeed, not only is that interest sometimes legitimate, I am also convinced that there are times when it is entitled to constitutional protection." Id. at 741.

Thus, Glucksberg established that a statutory ban of assisted-suicide does not violate the Due Process Clause of the Fourteenth Amendment. On the very same day that Glucksberg was decided, the Court issued a companion decision in Vacco v. Quill, 521 U.S. 793 (1997). In Vacco, the Court upheld New York's statutory ban of assisted-suicide against an argument that it violated the Equal Protection Clause of the Fourteenth Amendment. Specifically, the plaintiffs in Vacco, physicians and terminally ill adults, petitioned the district court for an order overturning New York's ban of assisted-suicide and argued "because New York permits a competent person to refuse life-sustaining medical treatment, and

12

because refusal of such treatment is 'essentially the same thing,' as physician suicide, New York's assisted-suicide ban violates the Equal Protection clause. Id. at 798 (citing Quill v. Koppell, 870 F. Supp. 78, 84 (SDNY 1994)). The district court denied the petitioners' request and ruled, "It is hardly unreasonable or irrational for the State to recognize a difference between allowing nature to take its course, even in the most severe situations, and intentionally using an artificial death-producing device." Id. at 84-85. However, the Court of Appeals for the Second Circuit reversed the district court and determined that "New York law does not treat equally all competent persons who are in the final stages of fatal illness and wish to hasten their deaths. . . . [t]hose in the final stages of terminal illness who are on life-support systems are allowed to hasten their deaths by directing the removal of such systems; but those who are similarly situated, except for the previous attachment of life-sustaining equipment, are not allowed to hasten death by self-administering prescribed drugs." Id. at 727-729. The Second Circuit determined that "the ending of life by [the withdrawal of life-support systems] is nothing more nor less than assisted suicide." Id. at 729. The Second Circuit concluded, "to the extent that New York's statutes prohibit a physician from prescribing medications to be self-administered by a mentally competent, terminally ill person in the final stages of his terminal illness, they are not rationally related to any

13

legitimate state interest." Id. at 731.

The Supreme Court reversed the Second Circuit and affirmed the district court, finding that the following "legitimate state interests" satisfy the constitutional requirement that a legislative classification bear a rational relation to some legitimate end: "prohibiting intentional killing and preserving life; preventing suicide; maintaining physicians' role as their patients' healers; protecting vulnerable people from indifference, prejudice, and psychological and financial pressure to end their lives; and avoiding the possible slide towards euthanasia." Vacco, 521 U.S. at 808-809.  The Court concluded: "Logic and contemporary practice support New York's judgment that the acts [withdrawal of life-support systems versus physician-assisted suicide] are different, and New York may, therefore, consistent with the Constitution, treat them differently." Id. at 808.

Similarly, the Florida Supreme Court in Krischer v. McIver, 697 So. 2d 97 (1997), upheld Florida's Assisted-Suicide Statute which is in question in the present case.  The Florida Supreme Court relied upon Glucksberg to determine that Florida's ban of assisted-suicide did not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  697 So. 2d at 100.  In addition, the Florida Supreme Court relied upon Vacco to determine that Florida's Assisted-Suicide Statute did not violate the Equal Protection Clause of the Fourteenth Amendment to

the United States Constitution. Id. After exhaustive analysis, the Florida Supreme Court in Krischer also determined that the Assisted-Suicide Statute passed constitutional muster under Florida's State Constitution, particularly under Florida's guarantee of privacy contained in the Florida Constitution's declaration of rights, Article I, Section 23, Florida Constitution. Id. at 104.

It is clear that this Court is on solid ground in determining that Plaintiff's complaint fails to state a cause of action under Rule 12(b)(6) of the Federal Rules of Civil Procedure and, to the extent it seeks relief under the Fourteenth Amendment, is subject to dismissal under Glucksberg, Vacco, and Krischer.  This Court will now take the opportunity to emphasize its refusal to grant the relief that Plaintiff seeks.  Plaintiff requests, among other things: "an order that provides for him to receive from a physician a lethal pain-relieving injection of the nature given to those being executed should a physician of plaintiff's enter into plaintiff's medical record a statement that plaintiff has less than a 30% chance within three months of obtaining a mental capacity of 75 I.Q. points or a statement that plaintiff has less than a 30% chance within three months of improving his physical capacity to 30% of the norm for his age." (Doc. # 1 at ¶ 4.5).

An opinion lifting the statutory ban of assisted-suicide in this case due to Plaintiff's diminished mental capacity and on the

15

loose standards that he enumerates would constitute a great miscarriage of justice. In addition to authorizing the imprudent extinguishment of Plaintiff's own existence, such an order could open the door to future arguments comparing the quality of one's life with one's intellectual capabilities, as reflected on a standardized IQ test.[4] This is especially troubling as Plaintiff requests an order allowing physician-assisted suicide upon his IQ falling to 70 points -- the highest possible score that a person can have while still qualifying as "mentally retarded" under generally accepted standards. This Court's independent research reveals the following excerpt from Atkins v. Virginia, 536 U.S. 304 (2002):

> The Wechsler Adult Intelligence Scales Test (WAIS-III) [is] the standard instrument in the United States for assessing intellectual functioning. . . . The test measures an intelligence range from 45 to 155. The mean score of the test is 100, which means that a person receiving a score of 100 is considered to have an average level of cognitive functioning. It is estimated that between 1 and 3 percent of the population has an IQ between 70 and 75 or lower, which is typically considered the cutoff IQ score for the intellectual function prong of the mental retardation definition.

Atkins, 536 U.S. at 309 n.5. (Internal citations omitted). Plaintiff's arguments regarding his diminished IQ are supported by unquestionably inappropriate conclusions.

---

[4] While Plaintiff generally mentions his physical capabilities, it seems apparent to this Court that Plaintiff's primary concern, as a member of MENSA and former practicing attorney, is his intellectual ability.

16

Furthermore, Plaintiff's assertion that dogs scheduled for euthanasia and convicted criminals awaiting execution are similarly situated to Plaintiff for Equal Protection analysis is unworthy of further analysis, as is Plaintiff's comparison of abortion and physician assisted-suicide. Plaintiff's arguments are insufficient to fell Florida's Assisted-Suicide Statute, a version of which has been in place since 1868.[5] This Court will not declare Florida's Assisted-Suicide Statute unconstitutional. Furthermore, this Court denies Plaintiff's request for an order specifically allowing him to hire a physician to terminate his own life when his IQ reaches 70 or upon any other circumstance. The vast shift in the well-established legal landscape that Plaintiff requests in this case is not substantiated by Plaintiff's complaint. This Court thus grants Defendant's motion to dismiss the complaint.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants' Motion to Dismiss or, Alternatively, Motion for Summary Judgment (Doc. # 3) is **GRANTED**.

(2) Plaintiff's complaint (Doc. # 1) is dismissed.

---

[5] See Krischer, 697 So. 2d at 100 ("Florida imposes criminal responsibility on those who assist others in committing suicide. Section 782.08, Florida Statutes (1995), which was first enacted in 1868, provides in pertinent part that every person deliberately assisting another in the commission of self murder shall be guilty of manslaughter. Thus, it is clear that the public policy of this state as expressed by the legislature is opposed to assisted suicide.")(internal citations omitted).

(3)  The Clerk is directed to terminate all pending motions, enter judgment accordingly, and to close the case.

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this <u>14th</u> day of July, 2008.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:   All Parties of Record